UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GATEWAY OFFSHORE PIPELINE COMPANY, § § § Plaintiff, § VS. § M/V ANTALINA, her engines, tackle, apparel, § etc., *in rem* and PEROVO SHIPPING CO. § LTD., *in personam* § § Defendants. § | CIVIL ACTION NO. 4:10-CV-860 |

## **OPINION AND ORDER**

Pending before the Court is Defendant the *M/V Antalina* and Defendant/Claimant Perovo Shipping Co. Ltd.'s (collectively "Defendants") motion for summary judgment. Doc. 20. In that motion, Defendants contend that Plaintiff Gateway Offshore Pipeline Company ("Gateway") "has not been and will not be able to present proof of a factual element essential to its case, *i.e.*, that its pipeline was damaged by an anchor deployed by M/V ANTALINA on or about September 12, 2008." *Id.* at 2.

Gateway has responded to the motion and introduced summary judgment evidence in support of its claims. Doc. 21. On February 4, 2012 Gateway filed its motion to supplement summary judgment evidence. Doc. 49. In that motion it sought to supplement the existing affidavit of Captain Wozniak with a new and expanded affidavit (Doc 49-1) composed after the deposition of Defendant's witness Captain Psomalis. Defendant responded to the motion to supplement, maintaining that the affidavit did nothing to bring forth evidence of a material fact issue that Gateway's pipeline was damaged by an anchor deployed by the M/V ATALINA on or about September 12, 2008. Doc 52. After considering the motions, the new affidavit of Captain

1 / 10

Wozniak, and the summary judgment evidence in this case, the Court finds that Gateway has failed to bring forward sufficient evidence that demonstrates the existence of a genuine issue of material fact for trial. The Court therefore grants Defendants' motion for summary judgment.

I. Background

This case arises from damage sustained by a section of Gateway's underwater gas-transport pipe in the Gulf of Mexico. Gateway contends, and Defendants have not contested, that Gateway owns a length of 10" gas transport pipeline in the High Islands area of the Gulf of Mexico. Doc. 21 at 3. In September, 2008, in preparation for Hurricane Ike, the operators of that pipeline, HIOS Group ("HIOS"), stopped the flow of gas through that pipe. *Id.* at 4. *See also* Doc. 21-1 at 7. In November of that year, the operators attempted to restore gas flow through the pipe and discovered a leak. *Id.* Gateway's subsequent investigation indicated that "separation [had] occurred from the HIOS 30" subsea tie-in valve assembly and part of the pipeline was missing." *Id.*

Gateway obtained data from PortVision, a vessel tracking company, that indicated that the *Antalina* had been in the vicinity of the Gateway pipeline during Hurricane Ike. *Id.* at 6.[1] Deposition testimony of a PortVision representative indicates that the *Antalina* was approximately 40 miles from the Gateway pipeline around the time of Hurricane Ike. *Id. See also* Doc. 21-3 at 6. The parties agree that at 6:20 am on September 12, the *Antalina* allided with a fixed platform approximately 19 miles from the Gateway pipeline. Docs. 21 at 6, 25 at 2. A geophysical inspection of the seafloor by sonar indicated the presence of a "scar" on the seabed near the Gateway pipeline. Docs. 21 at 6, 21-2 at 3. Gateway has also obtained the statements of various experts interpreting the available data, which the Court addresses below.

---

[1] PortVision locates and tracks vessels using a unique VHS signal broadcast by vessels' Automatic Identification System ("AIS"). Doc. 21 at 6.

Gateway filed its complaint against the Defendants in this Court on March 16, 2010 for negligence and gross negligence. In that complaint, Gateway asserted that "Gateway's pipeline was severely damaged when drifting *M/V Antalina*'s anchoring system allided with the pipeline, grabbed it, and dragged it about 2,000 feet upon which the northern connection to the HIOS line ruptured and caused the end of Gateway's pipeline to come to rest approximately 800 feet to the southwest of the connection to HIOS." Doc. 1 at 2.

On January 12, 2012, Defendants filed a motion for summary judgment in which it contends that "Gateway has not been and will not be able to present proof of a factual element essential to its case, *i.e.*, that its pipeline was damaged by an anchor deployed by M/V ANTALINA on or about September 12, 2008." Doc. 20 at 2. That motion has been fully briefed and is ripe for consideration.

## II. Summary Judgment Standard

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The substantive law governing the suit identifies the essential elements of the claims at issue, and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Col. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid*

*Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Moreover, if the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986) (the movant with the burden of proof "must establish beyond peradventure *all* the essential elements of the claim or defense to warrant judgment in his favor") (emphasis in original).

Once the movant meets its burden, the non-movant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor. *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). To do so, the non-movant must "go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is genuine issue for trial." *Webb v. Cardiothracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).

Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 139–40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (1992), *cert. denied*, 506

U.S. 825 (1992). Nor are pleadings summary judgment evidence. *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075.). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Nor is the court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *see also Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 198–200 (5th Cir. 1988). There is a "genuine" issue of material fact if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Analysis

"[N]egligence is an actionable wrong under general maritime law," and the elements of that tort are "essentially the same as land-based negligence under the common law." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)). The elements of the cause of action, therefore, are "'a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the

plaintiff's injury.'" *Id.* (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (international citations omitted)).

After substantial time for discovery, Gateway has failed to produce sufficient evidence to create a genuine issue of material fact on the question of the Defendants' role in the damage sustained by the Gateway pipeline. Although the parties appear to agree that Gateway's pipeline was damaged, Gateway has introduced little, if any, evidence that Defendants were responsible for that damage.

As a threshold matter, Gateway has introduced no evidence that its pipeline was damaged on September 12, 2008, the date on which the *Antalina* was drifting in the Gulf, and not at any other time during the approximately two months in which the gas line was shut off. In fact, Gateway has conceded that "it is not possible for [it] to [know] when the damage to the Pipeline occurred. . . . Gateway is only certain that there was flow through its Pipeline prior to Hurricane Ike, and that a rupture was discovered after Hurricane Ike." Doc. 21 at 4. Gateway nevertheless focused its accident investigation on shipping activity taking place during Hurricane Ike. *Id.* at 5.

That investigation resulted in a geophysical survey of the seabed around Gateway's pipeline that indicated a "drag scar" on the seabed. Doc. 21-2 at 3. Gateway introduced deposition testimony of Matt Keith, a technician with the company that performed the seabed inspection, to support its contention that its pipeline was displaced by an anchor. Keith's strongest endorsement of Plaintiff's theory was his statement that "maybe it was displaced because of an anchor or something." *Id.* However, Keith also said that he "[didn't] think we had the ability to determine one way or the other" whether the pipeline was displaced by an anchor and that "there's . . . a lot of drag scars on the sea floor in the Gulf of Mexico from shrimpers and things along those lines." *Id.* Further, Keith stated that drag scars at the depths of the seabed in

the vicinity of Gateway's pipeline can remain "for extended periods of time" and that he lacked both the experience and information to determine the age of the scar purported to be the cause of the pipeline damage.[2]

The strength of Keith's testimony is best characterized by Gateway itself: "Basically, he never left out the possibility of the displacement due to an anchor." Doc. 21 at 6. The Court agrees with this assessment. Keith did not exclude the possibility that the damage was caused by an anchor, but he also failed to state that it was. The equivocal testimony fails to create a genuine issue of material fact as to whether the damage to Gateway's pipeline was caused by an anchor, rather than a shrimp trawler, that it occurred during Hurricane Ike, rather than at some period before or after that event, or whether the damage was caused by human activity, rather than by the action of extreme weather.

Gateway also introduces deposition testimony of PortVision's corporate representative, Jason Tieman. Gateway retained PortVision to determine the location of vessels near the pipeline during Hurricane Ike. Doc. 21 at 6. Tieman contends that, based on the maps and data he analyzed for the deposition, it was "safe to say [the *Antalina* was] more than 40 [miles] from Gateway's pipeline." Doc. 21-3 at 6. The parties agree that the *Antalina* approached somewhat closer to Gateway's pipeline when it struck an oil platform 19 miles away. Doc. 21 at 6. There is no evidence before the Court that it came closer than that. Even if the Court agreed with Gateway's characterization of this evidence as demonstrating that the *Antalina* "was surely in the vicinity of the Pipeline," the presence of the *Antalina* within 19 miles of the pipeline fails to create a genuine issue of material fact as to whether it passed over and thereby caused damage to Gateway's pipeline.

---

[2] "[I]n these water depths, we do see these scars for extended periods of time. So I know there are -- I've heard of studies that are done to determine the age of scars. But based on the geophysics alone, we can't tell, you know, tell how old they are." Doc. 21-2 at 4.

Gateway also offers speculation as to the *Antalina's* heading and movements based on prevailing winds during and after Hurricane Ike, as interpreted by Stefan Wozniak, an experienced sea captain. Docs. 21-4, 21-9. This evidence also fails to create a genuine issue of material fact. Even after repeated questioning in his deposition, Wozniak failed to state affirmatively that the *Antalina* drifted across the Gateway pipeline. Instead, Wozniak stated only that it was his "understanding from the [*Antalina's*] logbook . . . that the ship was drifting in the area of the pipeline." Doc. 21-4 at 4. After Defendant's counsel requested that he answer with more specificity, Wozniak continued to state that the *Antalina* "drifted in a southwesterly direction in the area of the Gateway pipelines," that he "compared the chart positions [of the *Antalina*] with the grid lines shown for the location of the l0" pipeline . . . [a]nd they are shown to be in a similar area," and that the longitudinal location "of that pipeline on the grid corresponds to the general area of the vessel." *Id.* Wozniak offered no more definite statement of the *Antalina's* location.

Although the Court does not impugn Wozniak's experience nor his knowledge of marine navigation, the limits of his testimony are evident in his own statement that "I guess [the damage] could have been caused by some other anchor, I don't know, . . . I'm not a metallurgist, but I have seen enough damaged pipeline to know that to bend these sections of pipeline with that thickness of wall and so on would have been caused by significant pulling and leverage . . . that may have been caused by a loaded vessel, bolt canier and its anchor." Doc. 21-4. Wozniak provides no more than a suggestion that the damage to Gateway's pipeline "may have been caused by a loaded vessel," not by the *Antalina*, and does little to bolster Gateway's bare allegations.

Similarly, Wozniak offered his opinion that "a prudent captain would have deployed

anchors" in the same conditions that the *Antalina* experienced during Hurricane Ike, but offers no evidence that the *Antalina* did, in fact, lower its anchors. Defendants, in contrast, have introduced affidavit testimony of David Scruton, a marine consultant and surveyor with experience assessing ship damage, who examined the *Antalina* on September 18 and 19, 2008. Doc. 20-7. Based on his observations and experience, Scruton stated that "neither of the two (2) anchors on board M/V ANTALINA were dropped" while the vessel was adrift. *Id.* at 3. Gateway's rebuttal is limited to the strange assertion that "[t]his fact is disputed, as Scruton produced a photo showing one anchor deployed." Doc. 21 at 13. Because Scruton acknowledges the fact that he inspected the *Antalina* while she was at anchor in Port Arthur,[3] Gateway's rebuttal is unconvincing.

That the evidence Gateway has produced fails to support its allegations against the Defendants is shown most clearly by a single heading in Gateway's response to the motion for summary judgment–"If It Was not *M/V Antalina*," Gateway asks, "Then Who?" Doc. 21 at 5. Gateway's question appears to lead the Court to its invocation of the doctrine *res ipsa loquitur*. Under that theory, if

> a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.

*Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1166 (5th Cir. 1990) (quoting *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98-99, 32 S.Ct. 399, 401, 56 L.Ed. 680 (1912)). Nevertheless, "[t]he doctrine is not proof and does not supply a want of proof." *Cie. Des Messageries Maritimes v. Tawes*, 205 F.2d 5, 7 (5th Cir. 1953).

---

[3] "After M/V ANTALINA departed Port Arthur, Texas on 11th September 2008, the next time that an anchor was dropped was at 1045 hours on 18th September 2008, when the M/V ANTALTNA arrived off Port Arthur, Texas, under tow." Doc. 20-7 at 3.

Gateway must still provide some evidence indicating which "thing" caused the injury of which they complain and that the thing was in the exclusive control of the Defendants. Gateway relies on the uncontested fact that the *Antalina* was "[t]he only vessel . . . in the High Island area during and after Hurricane Ike that could have possibly deployed its anchor." Doc. 21 at 12. Gateway has introduced no evidence to show that the *Antalina* was the instrumentality of the damage, however, or that the damage occurred while the *Antalina* was in the vicinity of the Gateway pipeline. Without such evidence, Gateway has offered only an unsubstantiated theory: "If It Was not *M/V Antalina*, Then Who?" Doc. 21 at 5. The Court does not know, nor, apparently, do the Defendants, but that ignorance fails to negate the Plaintiff's burden of creating a genuine issue of material fact on which to proceed to trial. Because Gateway has failed to do so here, the Court grants the Defendants' motion for summary judgment.

Accordingly, it is hereby

**ORDERED** that Plaintiff Gateway Offshore Pipeline Company" Motion for Leave to Supplement its Summary Judgment Evidence (Doc. 49) is DENIED.  It is further

**ORDERED** that Defendant the *M/V Antalina* and Defendant/Claimant Perovo Shipping Co. Ltd.'s motion for summary judgment (Doc. 20) is GRANTED.

SIGNED at Houston, Texas, this 10th day of September, 2012.

                                                            _____
                                                            MELINDA HARMON
                                                            UNITED STATES DISTRICT JUDGE